Staples, J.
By an act of the Legislature passed February 3d, 1866, amended by an act of March 3d, 1871, no insurance company which has not been incorporated under the laws of Virginia, can carry on its business within the State, until it shall have deposited with the treasurer of the State securities—State, corporate, or individual—of the cash value at least of ten thousand dollars.
If the securities so deposited are registered or individual bonds, the company is required, at the same time, to deliver to the treasurer a power of attorney, empowering the latter to transfer the bonds, when necessary, for the purpose of meeting any of the habilites provided for in the act. It is also provided, that any foreign insurance company doing business in the State, may be sued in the courts of the commonwealth upon policies of insurance made to citizens or residents therein, in like manner as if such foreign insurance company had been incoi’porated by the General Assembly.
And by another provision of the act, it is declared that if such company shall cease to carry on business in this State, and its liabilities, fixed or contingent, to citizens of the State, shall have been satisfied or terminated, *512 upon satisfactory evidence of this fact to the treasurer, he is authorized to deliver to such company the bonds and other securities deposited with him.
There are other provisions in the act, but it is not necessary to mention them, as they have no bearing upon the matters in controversy here.
The Andes Insurance Company, incorporated in the State of Ohio, uuder authority of this statute, deposited with the treasurer of this State, fifty thousand dollars of United States registered bonds, and until the occurrences hereinafter mentioned, has been carrying on the business of insurance in Virginia.
On the 29th of October 1872 the plaintiff in error, who is the assignee in bankruptcy of the Merchants Insurace Company of Chicago, sued out of the clerk’s office of the Circuit court of the city of Richmond, an attachment against the Andes Insurance Company, upon a claim of about seven thousand dollars.
This attachment was served the 30th of October, 1872, upon Joseph Mayo, State treasurer, by delivering to him a copy, arid summoning him to appear as garnishee at the next term of the Circuit court.
When the attachment came on to be heard, a motion to abate it was made on several grounds. This motion was sustained by the court; and the attachment was thereupon quashed. The case is before us upon a writ of error and supersedeas to that judgment. It is not deemed necessary to consider all of the grounds suggested for abating the attachment, as, in our view, one of them is decisive of the case.
It is important, in the first place, properly to understand the nature and effect of the process of garnishment. Garnishment is substantially a suit by the defendant in the attachment, in the name of the plaintiff against the garnishee. In this suit, as against the gar *513 nishee the plaintiff stands upon no higher ground than the defendant, and can acquire no greater right than the defendant himself possesses. In a case before the cuit court of the United States, Daniel, J., said: “The proceeding must be regarded as a civil suit, and not as a process of execution to enforce a- judgment already rendered. In this proceeding the parties have a day in court; an issue of fact may be tried by a jury; evidence adduced, judgment rendered, costs adjudged, and execution issued on the judgment.” Tunstall v. Worthington, Hempstead’s R. 662. Drake on Attachment, sec. 452.
Garnishment also operates as an attachment or levy upon the effects of the defendant in the hands of the garnishee. It renders the garnishee liable for such effects, or their value, if they are not forthcoming to meet the judgment of the court. And it has been held in several cases, that the garnishee will be personally responsible if the goods are taken from him by a wrongdoer ; and this, upon the ground that the garnishee may have his action of trespass against the latter. Parker v. Kinsman, 8 Mass. R. 486; Despatch Line of Packets v. Bellamy Man. Co.; 12 New Hamp. R. 205.
How, it would seem to be very clear upon general pi’inciples, that the treasurer of the State having the control and custody of insurance funds and securities under an act of the Legislature, cannot be subject to any proceeding of this sort. If the garnishment operates in this case as in all others, to bind the effects, it is obvious that these securities may at any time be taken from the possession ot the treasurer, to answer the demands of creditors. Judgment may be rendered against him for their value, if they are not forthcoming in obedience to the orders of the court; costs adjudged; and executions and attachments issued to enforce obedience *514 or secure payment. These results must follow, or the r J . , ’ courts must contrive, m some way, to divest the judgin these cases of the operation and effect attaching to all other judgments in proceeding by garnishment.
The treasurer may conceive it to be his duty to refuse obedience to an order of the court requiring him to surrender the securities. How is the order to he enforced? Is he to be attached while in the discharge of his official duties, taken from his office, and detained in custody, for refusing to violate a trust reposed in him by the Legislature? He may decline to appear: Is the court to hear proof of the amount or value of these securities, and order their delivery to one of the officers of the court ?
This would be to violate the whole purpose and intent of these statutes, and render them a delusion and a snare, instead of affording a security to citizens and residents of Virginia. By the express terms of the act, the treasurer is prohibited from surrendering these securities until the liabilities of the company to the citizens of the State shall have been satisfied, or shall have terminated. It is easy to perceive that the whole legislative scheme may be defeated, and the law violated, if these securities may he subjected to the claims of every foreign creditor who may assert a demand in our courts.
It is said, however, that none of these consequences can follow in this case, because the Andes Company have satisfied all their liabilities in the State, and the treasurer is willing to surrender these securities under the order of the court.
I think it a sufficient answer to this to say that we are not permitted to engraft exceptions upon the law to meet particular cases. The question must he decided upon general principles, and not with reference to the- particular facts of this case, or the views and opinions of the treasurer. Something more is involved' than the *515 rights and obligations of the treasurer. It is a question that concerns the State. It is certainly not compatible with her sovereignty and dignity to be arraigned before her own tribunals, at the suit of individuals, in any other mode than is prescribed by her statutes. IÑTor is it consistent with her interests, nor the proper administration of public affair’s, that her officers shall be arrested in their public duties, and required to answer before the courts for funds or securities committed to their custody for a specific purpose, under authority of a public law. The treasurer of the State is one of the most important officers of the commonwealth, with grave, arduous and difficult duties to perform. It is impossible -to foresee the mischiefs and embarrassments that will ensue, if, in addition to these duties, he is to be involved in the conflicts of creditors, to answer innumerable rival attachments, employ counsel, answer interrogatories, and otherwise consume time and attention which should be devoted exclusively to the public interests. I do not deem it necessary to cite the numerous authorities bearing upon this point. They are fully considered in Drake on Attachment, sec. 492 to 516 inclusive.
While there is some conflict of opinion in regard to" the liability of municipal corporations and their officers to the process of garnishment, no case of acknowledged authority can be found which holds that the officers of a State can be made liable, by this proceeding, for funds in their hands, clothed with a trust under the authority of a public law. The Supreme court of Massachusetts has announced the broad doctrine, that no person deriving his authority from the law, and obliged to execute it accoi’ding to the rules of law, can be charged as garnishee in respect of any money or property held by him in virtue of that authority. Brooks v. Cook, 8 Mass. R. 256; Colby v. Coates, 6 Cush. R. 558.
*516 However broad this principle may be thus announced, there is peculiar force in its application to the present : case. The treasurer is required by the statute to retain the securities m the treasury for the special objects contemplated by the act, until the liabilities of the company are settled or terminated. So long as any thing remains to be done, so long as these liabilities continue, he is expressly prohibited from disposing of or surrendering them. And when the treasurer is satisfied these securities or funds are no longer required to meet any liabilities of the company in the State, he is authorized and required to deliver them to the company. This is the extent of his-authority. His power and duty are fixed by the law. How, whether this does or does not constitute a contract on the part of the State with the insurance company, it is the law for the treasurer, fixing the measure of his authority and his responsibility. He. holds the securities in trust, to be administered, first for the people of Virginia, and then for the company making, the deposite. This is the distinction given them by the law, eontroling not only the treasurer but the courts also; and it would seem there is no power, except that of the Legislature, to change such destination.
It was insisted, however, that in this way a foreign insurance company may effectually screen its assets from the just claims of creditors. The theory of this whole legislation is, that a foreign insurance company may come into the State, deposite its funds and securities with the treasurer, and carry on business here for an indefinite period. However long this may continue, the securities deposited cannot be surrendered or subjected to the claims of creditors. If this exemption be wrong, if the State has improperly empowered a certain class of debtors to place their assets beyond the reach of creditors, the policy of this legislation is bad, and-ought- *517 to be abandoned. But this is a matter which addresses itself to the consideration of the Legislature, and not to the courts.
In returning the securities to the company depositing them, the State complies with her engagement, as expressed through her statutes. The foreign creditors have no just cause of complaint. As to them the securities are in the same condition they occupied before the deposite was made. It is not to be presumed that an insurance company will permit its assets to remain in the treasury after it has ceased to carry on business in the State, merely to defeat the claims of creditors. If this shall be done, the State or the treasurer would scai’ce become a party to the fraud, and the company would no doubt be required to take possession of its property. Doubtless, upon the failure of any other remedy, the courts, ever alert to prevent and suppress fraud, would, in such case, assume jurisdiction and afford suitable relief. Nothing of the sort is pretended in this case, and no such question arises.
Upon the whole, in every view of the case, I am satisfied the judgment should be affirmed.
Judgment aeeirmed.