HENRY ROSENBERG v. CHARLES SHAPER.

1. STATUTE CONSTRUED—LANDLORD'S LIEN.—The act concerning rents and advances, of April 4, 1874, (Paschal's Dig., art. 7418c,) gives a lien to landlords in towns and cities upon goods, wares, and merchandise in the rented premises, to secure rents that may become due.
2. LANDLORD'S LIEN—DISTRESS WARRANT.—The landlord's lien exists against an assignee of the goods, &c., on the leased premises, for the benefit of creditors, independent of a levy of a distress warrant prior to the assignment.
3. PRACTICE.— The practice of submitting a cause in the Supreme Court on an agreed statement of facts, commended.

APPEAL from Galveston.   Tried below before the Hon. William H. Stewart.

Henry Rosenberg leased a brick store in the city of Galveston, in the early part of 1876, to Shaper, by oral lease. Shaper occupied the premises under the lease, with a general stock of dry goods, doing business therein, as a dry-goods merchant, from the 1st of April to the 30th of October, 1876, during the whole of which time he paid no rent.   One thousand dollars was then due.   At the last-mentioned date, Rosenberg, being informed that Shaper was about to make an assignment for the benefit of his creditors, sued out a distress warrant before Hugo Brosig, a justice of the peace of Galveston county, and placed the same in the hands of the constable for levy.   The constable went to the store October 30, but found the same closed and locked up.   He went there

repeatedly thereafter, but always found the store closed, until the 9th of November. On the 9th of November, he found the store open and in the possession of one Charles Baehr, who held the stock of goods, as assignee, for the benefit of the creditors of Shaper. The constable exhibited and read the warrant to Baehr, and said he was going to levy it. Baehr told the constable that he (Baehr) would not resist the authority, and did not offer any resistance. Baehr held the goods, and told the constable that if he interfered with them, it would be at his own peril. The constable did not make a levy. The constable again exhibited and read the warrant to Baehr on 14th November, and returned the same without making the levy, stating the facts.

Shaper made an assignment of all his assets to Baehr, for the benefit of all his creditors. The assignment was dated the 30th day of October, 1876, was acknowledged on the 31st of October, and filed for record that day. By the terms of the assignment, any right or rights of preference, if any there were, that might exist in law or equity, were to be duly respected and preserved by the assignee in the distribution of the assets. The assignee kept the store closed about ten days, making up an inventory of the stock of goods. In the deed of assignment the stock of goods was estimated to be worth about six thousand dollars. The assignee sold the stock of goods in the manner directed by the deed of assignment.

The attorneys of Rosenberg advised him that the constable had no right to break open the doors of the store for the purpose of levying a distress warrant.

Rosenberg claimed a lien for rents; Baehr refused to give his claim a preference, and he was made a party defendant to the proceedings in the District Court of Galveston county, to which court the distress warrant was returnable.

Rosenberg filed his petition in the District Court, making Shaper and Baehr defendants, claiming a preference lien upon the stock of merchandise, and praying judgment against Sha-

per, and that the court would order Baehr to recognize the debt as a prior lien, and to pay the same in full.

At the trial, the district judge sustained the defendant's demurrer to so much of the petition as claimed a lien for rent. A jury was waived and the cause submitted to the court. A personal judgment was rendered against the defendant Shaper, without any lien. Rosenberg appealed.

*Ballinger, Jack & Mott,* for appellant, cited and discussed Paschal's Dig., art. 7418; Broom's Leg. Max., 650; Wharton's Leg. Max., 87; Taylor's Land. and Ten., secs. 583, 578, 593, 594; O'Hara v. Jones, 46 Ill., 292; Stamps v. Gilman, 43 Miss., 464; Noe v. Gibson, 7 Paige Ch., 513; Story's Eq., secs. 1037, 1038; Burrill on Assign., sec. 365; Lewis' Appeal, 66 Penn. St., 312.

*M. E. Kleberg,* for appellee.

I. The landlord in cities owning and renting premises, has no statutory lien, in this State, upon the goods, wares, and merchandise of his tenant on the rented premises, to secure the payment of the rent.

In support of this proposition, appellee contends that the preference lien provided by the act of April 4, 1874, entitled "An act concerning rents and advances," applies only to animals, tools, and other property furnished by the rural landlord to the tenant, and to the crop raised on such rented premises. The act gives a lien upon the property "thereinafter indicated." It then indicates the property as stated above. The urban landlord has no lien by the provisions of said act upon the goods, wares, and merchandise of his tenant for rent. (Paschal's Dig., arts. 7418c–7418h; *in re* Robinson, 1 Tex. Law Jour., No. 12; Morgan v. Campbell, 22 Wall., 389.)

II. The appellant acquired no lien by the mere suing out of a distress warrant, no levy having been made.

1st. At common law, the landlord had no lien upon the

property of his tenant for rent, but he simply had the right to distrain, and he acquired a lien only by the actual levy of a distress warrant. As the mere issuance of an execution gives no lien to the execution creditor, but the lien only arises from an actual levy of the execution, so the distress warrant creates no lien in favor of the landlord until a seizure by virtue thereof has been made.

2d. The constable was guilty of negligence in not levying the distress warrant, if he had any authority under the law to make a levy. He never applied to Baehr to open the doors of the store.

3d. The true reason why the constable failed to make a seizure by virtue of his distress warrant, is because said warrant was a nullity.

III. Under the laws of this State, the urban landlord has no power to enforce the payment of rent that may be due him from his tenant by seizure of property under or by virtue of a distress warrant.

The only authority in this State to issue a distress warrant is to be found in the second section of the "Act concerning rents and advances," and by the proviso in said section the warrant can only be invoked to enforce the payment of such rents and advances as are mentioned in the first section of said act. The first section having limited the lien to animals, tools, and other property furnished by the landlord to the tenant, and to the crop raised on the rented premises, it follows that the distress warrant which the appellant had issued and placed in the hands of the constable was a nullity, and no lien could arise by virtue thereof even if a seizure had been effected, much less where, as in this case, there was no levy or seizure whatever. (Paschal's Dig., arts. 7418c, 7418d.)

Bonner, Associate Justice.—This case is submitted upon an agreed statement of facts and the following two propositions for our decision:

1. Does the " Act concerning rents and advances," of April 4, 1874, give a lien to landlords in towns and cities upon goods, wares, and merchandise in the rented premises, to secure rents that may become due?

2. Under the particular circumstances of this case, is appellant entitled to a preference under said act, by virtue of his having sued out a distress warrant, though no levy thereof was made?

Before disposing of the case, we must commend this practice to the very favorable consideration of the profession. By it the expense of an appeal will be much reduced, and both the presentation and early decision of the case greatly facilitated.

The questions involve the proper construction of the act of April 4, 1874, 14th Leg., 55, (Paschal's Dig., arts. 7418*c*, 7418*h*,) entitled "An act concerning rents and advances."

The first section of the act reads as follows:

"That all persons leasing or renting lands or tenements, at will or for a term, shall have a preference lien upon the property of the tenant hereinafter indicated, upon such premises, for any rent that may become due, and for all money, and the value of all animals, tools, provisions, and supplies furnished by the landlord to the tenant to enable the tenant to make a crop on such premises, and to gather, secure, house, and put the same in a condition for market, the money, animals, tools, provisions, and supplies so furnished being necessary for that purpose, whether the same is to be paid in money, agricultural products, or other property; and this lien shall apply only to animals, tools, and other property furnished by the landlord to the tenant, and to the crop raised on such rented premises; and it shall not be lawful for the tenant, while the rent and such advances remain unpaid, to remove or permit to be removed from the premises so leased or rented any of the agricultural products produced thereon, or any of the animals, tools, or property furnished as aforesaid, without the consent of the landlord; and

such preference lien shall continue as to such agricultural products, and as to the animals, tools, and other property furnished to the tenant as aforesaid, so long as they remain upon such rented or leased premises, and for one month thereafter; and such lien as to agricultural products, and as to animals and tools furnished as aforesaid, shall be superior to all laws exempting such property from forced sales; provided, that such lien shall not attach to the goods, wares, and merchandise of a merchant, trader, or mechanic, sold and delivered in good faith in the regular course of business; and provided further, that the removal of agricultural products for the purpose of being prepared for market shall not be considered a waiver of such lien, but such lien shall continue and attach to the products so removed the same as if they had remained on such rented or leased premises."

This section leaves evident marks of that hasty and inconsiderate joinder of expression which should never enter into a solemn and deliberate legislative enactment, and which constitutes a most prolific source of expensive litigation.

The act of January 16, 1843, (Paschal's Dig., art. 5207,) is entitled "An act concerning rents," and gives, in general terms, to landlords a lien upon all the property of the tenant upon the rented premises, for the payment of the rent. That act, like the one in question, doubtless to prevent an undue restraint upon trade, has the proviso that the lien shall not attach to any goods, wares, and merchandise of a merchant or trader, after the same shall have been sold in good faith and removed from the premises.

The subsequent act of October 23, 1866, (Paschal's Dig., art. 7110,) was intended for a different purpose, as shown by its caption, being "An act to give a lien on the crop and stock for advances to assist in making the crop."

That act, by its terms, was intended to give to the party making the advances a lien to secure the same, which should "have a preference of all other liens, except that for the rent of the land on which the said crop may be made."

By section 6 of the act now under consideration, both these former acts were repealed.   This one was evidently intended to embrace both objects covered by the others, as is shown by its caption, being an act concerning both rents and advances.

By this act two kinds of liens were provided for: one, a preference lien—that is, a lien superior to any that the tenant and a third party might make—upon the property generally of the tenant; the other, a lien, which should "be superior to all laws exempting such property from forced sale," upon the agricultural products and the animals and tools furnished.

One difficulty, in the construction of this section, is that the first portion of it provides that this preference lien shall be upon the property thereinafter indicated, and the only property which is expressly indicated is the animals, tools, and other property furnished by the landlord, and the crop raised on the rented premises.

It is contended that, by this phraseology, the lien does not extend to any other property; as in this case, to the goods, wares, and merchandise of a trader who is a tenant.   There is serious difficulty in reconciling the ambiguous and conflicting provisions of this section, without seeming to enter upon the domain of judicial legislation, which should always be avoided.   It is the duty of the court, however, to so construe the statute as to uphold every provision as far as possible; and to do this, we should look to it as a whole, and endeavor to carry out the evident intention of the Legislature in the light of the surrounding circumstances and the object intended to be accomplished.

The statute had obviously two distinct purposes in view in giving this preference lien: one to secure the rent, and the other to secure the advances.   This lien was intended in its benefits, in the very words of the first part of the section, for "all persons leasing or renting lands or tenements."   As to the agricultural products, animals, and tools furnished, this lien was intended not only as a preference one, as above defined, but superior even to the provisions of the law itself

exempting such property from forced sales; for the reason that thereby the means were furnished to raise that subsistence, a large portion of which was thus exempted.

That this preference lien was intended to apply to goods, wares, and merchandise as a class, is, by a familiar rule of construction, (*exceptio firmat regulam in casibus non exceptis,*) necessarily implied, by the language in the proviso, that it shall not attach to the goods, wares, and merchandise of a merchant, trader, or mechanic, sold and delivered in good faith in the regular course of business; and that it was intended to apply to property generally, is implied by the terms of the second and third sections of the act, which require the distress warrant to issue, commanding and making it the duty of the officer to seize, without reservation, the property of the defendant.

It has long been the settled policy of the law to give to all landlords security, and speedy enforcement by stringent remedies, for the rent which may be due them.

To adopt the construction that the lien under consideration was intended to apply only to the animals, tools, and other property furnished by the landlord to the tenant, and to the crop raised by him, would virtually restrict the benefits of the act to persons leasing and renting out lands and tenements for farming purposes only, and, by an unjust discrimination, would relieve the merchant, trader, mechanic, and others from its burdens, and impose them solely upon the husbandman.

We are of opinion, then, that the act under consideration gave a lien to landlords in towns and cities upon goods, wares, and merchandise in the rented premises, under the qualification mentioned in the proviso, to secure the rents that may become due.

This, in effect, under the facts of this case, disposes of the second proposition. By the terms of the assignment, any right or rights of preference, if any there were, that might exist in law or equity, were to be duly respected and pre-

served by the assignee in the distribution of the assets.   The lien of the plaintiff was statutory, and did not depend upon the levy, which was only the means to enforce it, and was superior to the deed of assignment, even had it not been expressly respected therein.   (Morgan v. Campbell, 22 Wall., 381.)

We are of opinion that, under the law as applied to the facts of this case, the property in controversy was liable to the landlord's lien, and that in not thus decreeing there was error, for which the judgment below must be reversed and the cause remanded.

REVERSED AND REMANDED.

[Chief Justice MOORE dissented.]