OGLESBY v. DURR. (No. 5420.)†

(Court of Civil Appeals of Texas. Austin. Dec. 16, 1914. Rehearing Denied Jan. 13, 1915.)

1. INSURANCE ⬥64—LIEN—PRIORITY—DEPOSITS OF INSURANCE COMPANY.

Under Rev. St. 1911, § 4909, requiring a mutual fire, storm, and lightning insurance company to deposit with the state treasurer certain securities to be held by him in trust for the policy holder, and section 4910, providing that, if any such company shall fail to pay a judgment against it for more than 60 days after its rendition, the funds on deposit with the treasurer may be garnished, a writ of garnishment cannot be issued against such funds so as to give the plaintiff priority therein over other policy holders after the company depositing the funds has become insolvent and has ceased to be a going concern transacting business in the regular way.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 89; Dec. Dig. ⬥64.]

2. INSURANCE ⬥52 — INSURANCE COMPANIES —GOING CONCERN.

Such company has ceased to be a going concern after the commissioner of insurance and banking has canceled its permit to do business, though no suit had yet been instituted by the Attorney General to forfeit its charter.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 49, 64, 65; Dec. Dig. ⬥52.]

3. INSURANCE ⬥64—INSOLVENCY—GARNISHMENT OF DEPOSITS.

Rev. St. 1911, § 4910, authorizing garnishment of the funds of an insurance company deposited with the state treasurer, must be construed so as not to render ineffective other sections of the same act, providing that the funds deposited shall be held in trust for the policy holders, and, so construed, authorizes garnishment only when the corporation is a solvent going concern.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 89; Dec. Dig. ⬥64.]

4. GARNISHMENT ⬥58—PROPERTY SUBJECT—DEPOSIT OF INSURANCE COMPANY.

In the absence of statutory authority, funds deposited with a state treasurer by an insurance company, in trust for the policy holders, are in custodia legis and not subject to garnishment.

[Ed. Note.—For other cases, see Garnishment, Cent. Dig. § 113; Dec. Dig. ⬥58.]

5. GARNISHMENT ⬥32—PROPERTY SUBJECT—TRUST FUNDS.

A trust fund is not ordinarily the subject of garnishment.

[Ed. Note.—For other cases, see Garnishment, Cent. Dig. § 53; Dec. Dig. ⬥32.]

Error from District Court, McLennan County; Tom L. McCullough, Judge.

Intervention by George Durr in an action

by J. P. Clevinger against the Mecca Fire Insurance Company. From a judgment granting to the claim of the intervener a priority to certain funds in the hands of the receiver, John S. Oglesby, the receiver brings error. Reversed, and judgment rendered for receiver.

Spell & Sanford and W. W. Naman, all of Waco, for plaintiff in error. R. L. Allen, of Waco, and Cunningham & Oliver, of Abilene, for defendant in error.

RICE, J. Geo. Durr, defendant in error, in a suit filed August 8, 1912, in the county court of Taylor county, against the Mecca Fire Insurance Company of Waco, a mutual fire, storm, and lightning insurance company, incorporated and transacting business under the laws of this state, by virtue of chapter 10, tit. 71, of the Revised Statutes of 1911, recovered judgment against said company on the 22d day of October, 1912, for the sum of $508.12, with 6 per cent. interest thereon and all costs of suit. Said company had theretofore, in compliance with said law, deposited with the state treasurer money and securities amounting to the sum of $6,000. Before the rendition of said judgment, to wit, October 1, 1912, said Durr caused a writ of garnishment to be issued and served upon said state treasurer, and thereafter, on the 26th of October, caused another writ of garnishment to be issued and served upon said officer, both of which issued out of the county court of Taylor county. Said treasurer having, prior to the 30th of December, 1912, answered both of said writs, admitting an indebtedness to said company, and stating that he had effects belonging to it in his hands exceeding the amount of said judgment, interest, and costs, judgment was on said day rendered against said treasurer in favor of said Durr in said garnishment cases for the sum of $508.12, with interest and costs of suit, providing, however, that the payment of one of said judgments would operate as a satisfaction of the other. On the 26th of October, 1912, J. P. Clevinger recovered judgment against said insurance company in the district court of McLennan county and applied for a receiver against it, and John S. Oglesby, plaintiff in error, was on the same day by said court appointed receiver, and empowered and directed to take charge of all the assets and funds of said company for the benefit of its creditors. He thereafter gave bond and qualified on the 2d day of November, 1912, and entered upon the discharge of his duties; but at the time said original suit was filed in Taylor county, as well as when said writs of garnishment were issued and served, the claims of numerous policy holders of said company, other than said Durr, had matured, were due, owing, and unpaid, but none of them had been put in judgment, nor had writs of

garnishment been served on the state treasurer, other than as above stated; but said insurance company did not have assets, including the deposit with said treasurer, at any of said times sufficient to pay the claims which had matured on its policies; and on the 24th of September, 1912, the commissioner of banking and insurance of this state had canceled its permit to do business; but otherwise said company was a going concern, engaged in business under the powers conferred by its charter, until the appointment of said receiver. On the 14th of December, 1912, said district court entered an order requiring all persons having claims against said company to file the same as interveners in said cause before the 13th of January, 1913, which time was afterwards extended by said company until the 19th of February; and on said December 14th said court likewise entered an order directing said state treasurer to surrender to said receiver all funds deposited with him by said company—of all of which facts said Durr was notified on the 24th of December, 1912. Thereafter, on the 11th of January, 1913, he filed his intervention in said cause, reciting the facts with reference to the several judgments obtained by him, and asked that his claims be given priority in payment over the claims of the creditors not having sued out writs of garnishment. Thereupon said Oglesby, receiver, and plaintiff in error herein, filed an answer to said intervention, alleging that the fund in the hands of the state treasurer had been deposited by said company in accordance with and under the authority of the laws of this state, in trust for its policy holders, and further alleged that said treasurer was holding said funds and refused to deliver them to him on account of said garnishments, praying that said intervention be set down for hearing, and that the court determine the claim of priority asserted by said intervener; and on the 12th of December, 1913, said intervention came on to be heard when said court rendered judgment allowing and approving the claim of said Durr as a full, valid, and prior claim against said insurance company, and against the funds and securities in the hands of the state treasurer and receiver, with a prior lien thereon, and decreed that said claim was prior to the claims of other intervening creditors for the full amount thereof, including principal, interest, and costs, aggregating the sum of $556.47, and directed said Oglesby, as receiver, to pay over to the clerk of the county court of Taylor county said sum, with the direction that said claim be paid in full before the distribution of the funds or money belonging to said company among the other creditors, from which judgment this writ of error was sued out; and this ruling is assigned as error by the plaintiff in error, on the ground that the funds and securities deposited by the Mecca Fire Insurance Company with the state treasurer were for the benefit of all policy holders, and that, where a trust is thus established for the equal benefit of several persons, no one of them will be entitled to priority to the exclusion or detriment of the others; and this is the principal question involved in this appeal, and, so far as we are advised, has never been passed upon by the courts of this state.

The statute under consideration has been twice construed: First, in the case of Robbins v. Midkiff, 46 Tex. Civ. App. 272, 102 S. W. 430, wherein it was held that said act applied, not only to an insurance company organized under it, but embraced and included all mutual companies theretofore organized, but which were acting thereunder, and therefore held that, in a proper case, their effects deposited by such companies with the state treasurer were subject to garnishment. The case of Graham v. Sparks, State Treasurer, et al., 56 Tex. Civ. App. 483, 121 S. W. 597, cited by plaintiff in error, merely holds that the funds of such insurance companies deposited with the state treasurer were not the subject of garnishment after a receiver had been appointed and its charter forfeited. In the instant case there was no forfeiture of charter, nor had the company been placed in the hands of a receiver prior to the issuance and service of the writs of garnishment, for which reason it is contended, on the part of defendant in error, that its funds in the hands of the state treasurer were subject to the writs of garnishment sued out. The determination of this question, then, involves the consideration and interpretation of certain articles of chapter 10, tit. 71, of the Revised Statutes of 1911, article 4905 of which provides for the incorporation of such companies, and designates the laws by which they shall be governed. Article 4906 treats of the application for permits, to be issued by the commissioner of insurance and banking; article 4907 of the conditions for obtaining charter, etc.; and article 4908 relates to the organization and the qualification of officers and directors, while articles 4909, 4910, 4911, and 4913 treat of how the funds shall be invested, the procedure in case of failure to pay loss, and the disposition of such funds, and provide for the cancellation and forfeiture of their charters. Article 4909 provides that, upon receipt of the license referred to in the preceding articles, said mutual company shall issue policies at once on the application submitted to the commissioner of insurance and banking for inspection, and collect the amount due on the notes representing the first assessment on the policies issued. Sixty per cent. of the amount so collected (it being not less than $6,000) shall be invested by the duly authorized officers of said mutual company in first mortgage bonds on lands in this state, at not exceeding 60 per cent. of the value of said lands, or in bonds of this state, or any county in this state, or in the bonds of any city, town, or

school district or corporation, provided said bonds have been approved by the Attorney General, and deposit said securities with the treasurer of this state within 90 days after the issuance of charter *in trust for the policy holders for such mutual company,* etc. The latter .part of article 4910 provides that should any company incorporated under the provisions of this chapter, within 60 days after the rendition of any judgment against such company, fail to pay same upon request of the party obtaining the judgment, the commissioner of insurance and banking shall furnish to him a list of the securities held in trust by the state treasurer 'for such company, and all such securities shall be subject to garnishment. While article 4913 provides that an examination shall annually, and at such other times as he deems proper, be made by the commissioner of insurance and banking into the affairs of said company and of the securities held in trust by the state treasurer, and if it shall appear that the amount of securities on deposit is less than the amount required herein to be on deposit, he shall at once notify the officers of said company; and unless the amount of the deficiency is placed on deposit with the state treasurer in money or securities, as therein provided, within 60 days, the permit issued by him to said company shall be canceled; and he shall report the same to the Attorney General, who shall at once bring suit to forfeit the charter of such company; and such company shall not be authorized to levy or collect assessments on premiums after the institution of such suit, etc.

[1] We think that said fund, under the facts disclosed by the record, was not, at the time the writs of garnishment issued, the subject of garnishment as the property of said Mecca Fire Insurance Company, under this statute, for two reasons: First, because, in our opinion, at the time of the issuance and service of such writs, said company was insolvent and no longer a going concern. It is unquestionably true, under the authorities in this state, that the effects of an insolvent corporation are the subject of garnishment while it is a going concern, transacting its business *in the usual and ordinary way,* but are no longer subject to such garnishment when it becomes insolvent and ceases to do business in the usual and ordinary way, at which time its funds become a trust fund for the benefit of all of its creditors. See Orr & Lindsley Shoe Co. v. Thompson, 89 Tex. 501, 35 S. W. 473.

[2] The facts, we think, clearly show that such company was insolvent at the time the state treasurer was garnished. Was it a going concern at that time, in the ordinary acceptation of this term? We think not. It appears that its permit had, before such writs were served, been canceled by the commissioner of insurance and banking; and while it is true that its charter had not been forfeited by the Attorney General, nor suit brought for such purpose, still, it could not, after such cancellation, do business in the regular and usual way. It might be inferred, however, from the last article above referred to, that notwithstanding such cancellation, until suit was filed by the Attorney General, said insurance company might levy and collect assessments; but this does not mean, we think, that it could transact other business. The power granted under the statute might be exercised merely for the preservation of its old business. If it was insolvent and not conducting business in the ordinary way, as we think the facts clearly show, then such fund was not ordinarily the subject of garnishment, but became a trust fund for the benefit of all of its creditors alike, and no one of them could obtain priority by garnishment over the others.

[3] Nor does the statute authorizing the funds of such company in the hands of the state treasurer to be garnished alter the case, because we think this article must be construed in connection with other sections of the statute, which provide that such funds deposited with the treasurer are to be held by him in trust for the policy holders of the company; it being a familiar principle that, in the interpretation of statutes, they shall be given such construction as will uphold all of their provisions, and carry out the evident intention of the Legislature in the light of surrounding circumstances and the objects intended to be accomplished. Rosenberg v. Shaper, 51 Tex. 140; State v. Harter, 188 Mo. 516, 87 S. W. 941. Surely, if said treasurer was holding such fund in trust for the benefit of all the policy holders of the company, as declared in the statute, it could not be contemplated that one by garnishment, where the company was insolvent, could obtain priority over the rest, because to do so would defeat the very purpose and object of such deposit; on the contrary, we think that the clause providing for garnishment was intended to be exercised only while the company was solvent, transacting its business in the usual and ordinary way. This construction permits a creditor, whose judgment has not been paid within 60 days after its rendition, to enforce collection thereof by garnishment proceedings, where the company is solvent, and at the same time sustains all of the other provisions of the statute, whereas the interpretation contended for by defendant in error would defeat the beneficent object for which such companies are incorporated, to wit, the equal protection of their policy holders.

[4] Without the aid of this statute, however, this fund could not have been garnished at all, for the reason that such funds in the hands of the state treasurer are in custodia legis, and not the subject of garnishment. See volume 2, Shinn on Garnishment, § 505; Waples on Attachment and Garnishment, 218, 225; 20 Cyc. 988G; Id. 990, where it is said:

"Likewise, on grounds of public policy, the government of the United States and officers and agents thereof, and the government of the individual states and their officers and agents, are exempt from process of garnishment."

See, also, 24 Cent. Dig. tit. Garnishment, § 36.; Rollo v. Andes Insurance Co., 23 Grat. (Va.) 509, 14 Am. Rep. 147.

[5] Besides, this fund is expressly declared to be a trust fund by said statute, and therefore was not ordinarily the subject of garnishment. See 20 Cyc. 993.

Believing that the court erred in rendering judgment in favor of the defendant in error, and since the facts are fully developed, it becomes our duty to reverse said judgment and here render the same in behalf of plaintiff in error, which is accordingly done.

Reversed and rendered.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
† Writ of error pending in Supreme Court.