## Case No. 6,084.

### HARP v. The GRAND ERA.

[1 Woods, 184.] [1]

Circuit Court, D. Louisiana. Nov. Term, 1871.

CARRIERS — CONNECTING LINES OF STEAMERS — THROUGH BILL OF LADING—LIABILITY FOR DAMAGE TO GOODS.

Where several carriers unite to complete a line of transportation and receive goods for one freight, and give a through bill of lading, each carrier is the agent of all the others to accomplish the carriage and delivery of the goods, and is liable for any damage to them, on whatever part of the line the damage is received.

[Followed in Richardson v. The Charles P. Chouteau, 37 Fed. 533.]

[Cited in Atchison, T. & S. F. R. Co. v. Roach, 35 Kan. 748, 12 Pac. 98; Peterson v. Chicago, R. I. & P. Ry. Co., 80 Iowa, 100, 45 N. W. 575; Knight v. Providence & W. R. Co., 13 R. I. 574.]

[Appeal from the district court of the United States for the district of Louisiana.]

In admiralty.

George W. Race, W. H. Foster, and E. T. Merrick, for libellant.

R. H. Marr, for respondent.

WOODS, Circuit Judge. On March 14, 1870, A. H. Redford shipped, at Nashville, eight boxes of books, on the steamer Tyrone, to be transported to New Orleans and delivered to libellant. A bill of lading was delivered by the officers of the Tyrone, by which the Tyrone reserved the right of reshipping. The Tyrone proceeded to Cairo and transferred freight and bill of lading to the Grand Era, which received the goods and adopted the bill of lading. On March 25, 1870, the Grand

1 [Reported by Hon. William B. Woods, Circuit Judge, and here reprinted by permission.]

Era arrived at New Orleans and delivered said eight boxes to libellant. The books in five of the boxes were damaged by water, to the amount of $422.91. The answer of George L. Kouns, claimant, alleges that the boxes were not transferred from the Tyrone to the Grand Era, but from the Tyrone to the wharf boat at Cairo, and thence to the Grand Era. That the Grand Era had no agreement or understanding with the Tyrone, but the contract of the Grand Era was made with the shipper at Cairo, and was simply to transport the boxes from Cairo to New Orleans and there deliver them to the consignee. That the Grand Era did not assume or adopt the terms of the bill of lading given by the Tyrone, and did not become privy to or bound by any contract made by that boat. That the books were well and carefully stowed on board the Grand Era and received no damage while so on board, and were delivered in the same condition in which they were received at Cairo. Wm. P. Turpin and John Tansy testify that the books in the boxes were in good condition and dry when delivered to the Tyrone. John M. Cloud, clerk of the Grand Era, witness for claimant, testifies that the books were in apparent good order when received from the Cairo Transfer Company, and they were delivered in the same order. They were stowed on the boiler deck beside the baggage of passengers, and he saw them every day and saw no damage done them. The original bill of lading went through, and the Grand Era paid the Tyrone her share of the freight. James Kerr, for claimant, testifies that the eight boxes were received at Cairo from one C. T. Hinde, agent of the Nashville Packets. They were received about March 18, and delivered in New Orleans, March 24 or 25. He says: "We gave to Hinde a transfer bill of lading, comprising all the freight shipped by said Hinde to a number of parties. The books were stowed on a barricade, which is a rack between decks, and witness did not see how they could have been damaged by water." The libellant testifies that the bill of lading given by the Tyrone was brought to his store in Camp street on March 25, 1870, and payment of freight demanded by a clerk of the owners of the Grand Era.

The evidence satisfies my mind beyond doubt, that the books were in good condition when delivered to the clerk of the Tyrone, and received on board that boat at Nashville, and that they were in a damaged condition when delivered by the Grand Era to Harp, the consignee, at New Orleans. The evidence does not disclose whether the damage was received while the books were on the Tyrone, or after they had been delivered to the Grand Era. So that the question is presented, is the Grand Era liable for damage occurring while the freight was on the Tyrone, or at the wharf boat at Cairo? As the Grand Era received the goods in apparent good condition,

even if she is not liable for damage which was sustained by the goods before such delivery, the burden of proof is on the respondent, to show that the damage did not happen after they were delivered to her. The burden of proof is on the carrier, to show that a loss was occasioned by a cause for which he is not responsible. Nelson v. Woodruff, 1 Black [66 U. S.] 156; English v. Ocean Steam Nav. Co. [Case No. 4,490]. As already intimated, the evidence on this point is balanced and unsatisfactory. But even if the damage occurred on the Tyrone or wharf boat, we think the defendant is primarily liable. When several carriers unite to complete a line of transportation and receive goods for one freight, they are each liable for damages, subject to reclamation against the party by whose act the damage occurred. Hart v. Rensselaer & S. R. Co., 4 Seld. [8 N. Y.] 37. Any other rule would subject shippers and consignees to such great inconvenience and uncertainty as to amount to a denial of a remedy. It sometimes occurs that in the course of transportation, freight passes into the custody of four or five different steamers or railroads, all forming one line and giving through bills of lading. To require the owner to ascertain to which one the damage is attributable before he brings his action, is putting a burden upon him, which makes relief almost impossible. Each carrier is the agent of all the others to accomplish and complete the carriage and delivery of the goods, when a through bill of lading is given and freight charged. Under this rule of law we entertain no doubt that the defendant is liable in this action for the damage sustained by the consignee. The damage is satisfactorily shown to be $422.19, for which, with interest and costs, let a decree be entered against the steamboat and the obligors on the bond of release.