## PETERSON v. THE CHICAGO, ROCK ISLAND AND PACIFIC RAILWAY COMPANY *et al.*

1. **Railroads:** CONNECTING LINES: LOSS OF BAGGAGE: LIMITING LIABILITY. Where a railroad company sells a ticket for the carriage of a passenger over its line and other connecting lines, it may, by a stipulation printed on the ticket and agreed to by the passenger, limit its liability for injury to his baggage to such injury as may occur on its own line. (Compare *Mulligan v. Railway Co.*, 36 Iowa, 181.)

2. ———: ———: ———: JOINT LIABILITY: EVIDENCE. The evidence in this case shows that the defendant company, at Davenport, Iowa, for itself, and as agent for three other railway companies, codefendants herein, sold a coupon ticket to plaintiff for the carriage of himself and baggage from Davenport, Iowa, to Los Angeles, California; that it checked his baggage only to Kansas City, the terminus of its line, where it arrived without injury; that at this point plaintiff had it rechecked by an agent of the connecting lines for Los Angeles, paying an additional sum which was exacted for extra weight; that it was carried from Kansas City to its destination on the same trains on which plaintiff traveled, and arrived there at the same time; that the trunks containing the baggage were pillaged at some point between Kansas City and Los Angeles, and articles of value stolen therefrom, but at what point this occurred, or in the hands of which of the carriers the trunks were when the wrong was done, does not appear. Each of the coupons belonging to the ticket bore the initials of each of the companies interested in the transaction, but the ticket in terms exempted the initial carrier from liability for injury to baggage not occurring on its own line, but no similar exemption was provided therein for the subsequent carriers. In an action to recover for the loss, *held* that the evidence showed that the principal defendant was not liable, but tended to show that the codefendant companies jointly bound themselves for the safe carriage of the baggage from Kansas City to its destination, and that it was error to direct a verdict for them.

3. ———: PASSENGER TICKET: NATURE OF: EVIDENCE. In the argument of the second point it is *held* that a railroad passenger ticket does not ordinarily import a completed contract, and that parol evidence may be introduced to show the elements of the contract which are not set forth in the ticket. (See opinion for citations.)

*Appeal from Scott District Court.*—HON. C. M. WATERMAN, Judge.

FILED, MAY 15, 1890.

THE plaintiff seeks to recover of the defendants, who are common carriers of passengers and baggage, the value of certain wearing apparel, ornaments and other property which were stolen from certain trunks of the plaintiff and her husband, while being conveyed as baggage from Davenport, in this state, to the city of Los Angeles, in the state of California. There was a trial by jury, and at the close of the introduction of the evidence the court, on the motion of the defendants, directed the jury to return a verdict for the defendants. Plaintiff appeals.

*Bills & Hass*, for appellant.

*Cook & Dodge*, for Chicago, Rock Island and Pacific Railway Company, appellee.

*Nathaniel French*, for other appellees.

ROTHROCK, C. J.—I. In the month of October, 1886, W. D. Peterson, the husband of the plaintiff, made a contract at Davenport, in this state, for transportation for himself and family from Davenport to Los Angeles, California. He purchased three through tickets, for which he paid the agent of the Rock Island Company the sum of two hundred and fifty dollars. He had certain traveling trunks, which were checked by the Rock Island Company to Kansas City. The tickets were what is known as "coupon tickets." The first coupon was good for transportation over the Rock Island road to Kansas City; the next coupon was for passage over the Atchison, Topeka and Santa Fe railroad from Kansas City to its junction with the Atlantic and Pacific railway, and on the last-named road to its junction with the California Southern railroad; and the last coupon was for passage over the last-named road to Los Angeles. The following is a copy of one of the tickets purchased by said Peterson at Davenport, with the last coupon attached thereto:

Peterson v. The Chicago, R. I. & P. Ry. Co.

| Year. | 1886 | 87 | 88 | 89 | 90 | 91 | 92 | 93 |
|---|---|---|---|---|---|---|---|---|
|  |  |  |  | 98 | 97 | 96 | 95 | 94 |

Issued by

Chicago, Rock Island & Pacific Railway.

Special Limited Ticket.

Good for one continuous first-class passage to points between punch-marks on coupon attached, when officially stamped, subject to the following contract :

In selling this ticket for passage over other roads, this company acts only as agent, and assumes no responsibility beyond its own line.

This ticket is not transferable, and the holder hereof, in consideration of the reduced rate at which it is sold, agrees with the respective companies over whose roads such holder is to be carried, to use the same on or before the expiration of date as canceled by punch on the margin of this contract ; and, the holder hereof failing to comply with this agreement, either of said companies may refuse to accept this ticket, or any coupons thereof, and demand the full regular fare, which the holder agrees to pay.

Agents will in no case extend time on this ticket.

If more than one date be canceled, it will not be received for passage by conductors.

None of the companies represented in this ticket will assume any liability on baggage except for wearing apparel, and then only for a sum not exceeding $100.

The coupons belonging to this ticket, if limited, will be canceled by ticket agent with an L punch, and will not be received for passage if detached.

If more than one station is designated as the terminal point on this ticket, it will be honored only to that station indicated by punch-marks nearest the starting point of coupon.

[Signed] E. St. John.

I hereby agree to all the conditions of the above contract.

[Signature] W. D. Peterson.

[Witness] H. H. Hills, Agt.

Per Allen.

Issued by the Chicago, Rock Island & Pacific Ry.

| National City. | California Southern Railroad. |
|---|---|
|  | Barston to |
| Los Angeles. | point between punch-marks in margin, on |
| San Diego. | conditions named in contract. |
| Colton. | 1—2—3—4—5—6—7—8—9—0. |
| Riverside. | First Class. This check not good if detached. |
|  | 1979. 55. |
| San Bernardino. | C., R. I. & P. A., T. & S. F. A. & P. C·S. |

All of the coupons were attached to the ticket, and they were in the same words and figures, with the exception of the name of the road over which they were good for travel, and the names of the stations on the line of road as appears on the margin. Taken all together, the tickets were good for the entire route by one continuous passage from Davenport to Los Angeles, over the four connecting railways above named. When the said Peterson and his family arrived at Kansas City, he presented his checks to a baggageman in the railroad depot at that place, and had his trunk rechecked to Los Angeles. The baggage went through to its destination by the same train which carried Peterson and his family. Upon his arrival at Los Angeles, he delivered his checks to some one representing a transfer company, and the trunks were delivered at the hotel where the family stopped in about an hour after the checks were delivered to the agent of the transfer company. When delivered to said Peterson, and opened, it was found that some of the trunks had been unlocked and opened, and wearing apparel and ornaments and other property had been taken therefrom of the value of about four hundred and fifty dollars, and the trunks had been again locked and fastened, so that when delivered to the owners at Los Angeles they had the appearance of not having been opened. There is no question made upon the fact that the trunks were pillaged at some point between Davenport and Los Angeles, as the said passengers had no access to the trunks on the journey, and did not see them except at Kansas City. The plaintiff's husband duly assigned all claim he had to recompense for the loss to the plaintiff, and the action to recover for the stolen goods was brought against all four of the connecting roads by which the journey was made.

The first count of the petition is based upon an alleged conspiracy of the four defendant companies, by which they confederated together and organized and perfected a plan by which said baggage should be transported over said lines of travel in such a way that

defendants could steal the contents, and relock the trunks, so that it would bè impossible for the owners of the same to discover, without the assistance of defendants, upon the road of which of said defendants said stealing was actually done. It is scarcely necessary to say that, if there was evidence to sustain this count of the petition, the plaintiff would be entitled to recover of any one or all of the defendants. But there is no such evidence. This count of the petition demands no further consideration.

II. In an amendment to the petition the plaintiff set up a second and further cause of action, in which it is, in substance, alleged that, at the time the tickets were purchased by Peterson and the journey was made, the four railroad companies owned and operated by the defendants formed a complete connecting line of railway from Davenport to Los Angeles, and at said time said four defendants had formed and entered into an agreement and combination for the purpose of transporting passengers and their baggage from Davenport to Los Angeles, by using said four lines of railway as a continuous line between said places, and making one fare or charge for such transportation for the entire distance; "that said business of transporting said baggage was done by defendants in such a manner that it was impossible for plaintiff or her husband to know or discover at what particular place on said route said property was so taken from said trunks, and she is, therefore, unable to state." There was no evidence to sustain this count of the petition as against the Chicago, Rock Island and Pacific Railroad Company. On the contrary, it is expressly provided, on the face of the ticket, that the said company assumed "no responsibility beyond its own line." It did not check the baggage beyond its own line, and the evidence shows that the trunks were not opened while they were in the possession of that company. When the baggage was delivered at Kansas City, the checks taken up and the trunks rechecked,

1. RAILROAD: connecting lines: loss of baggage: limiting liability.

the contract, so far as the Rock Island Company was concerned, was fully performed. This court is committed to the doctrine that the receiving or initial carrier may, by a stipulation in the bill of lading or contract of carriage, limit its liability to injuries to the consignment which occur on its own line. *Mulligan v. Railway Co.*, 36 Iowa 181. We do not understand counsel for appellant to claim that the court erred in directing a verdict for the Rock Island Company, and it has made no appearance in this court, and has not filed either brief or argument.

The important question to be determined in the case is whether the other three defendants are jointly, or, rather, jointly and severally, liable for the pillage of plaintiff's baggage. That some one of them is liable there can be no serious

2. —: —: —: joint liability: evidence.

question. It is true the larceny may have been committed by the employes of the transfer company at Los Angeles. But, in view of the brief time between the delivery of the checks and the arrival of the baggage at the hotel, this is not at all probable. To determine this question, it will be necessary to analyze the contract, and determine its legal effect upon the rights of the parties. It will be observed that the ticket does not provide that the Atchison, Topeka and Santa Fe, the Atlantic and Pacific, and the California Southern Railroad companies assumed no responsibility beyond their own lines. Their obligation is, therefore, to be determined by the ticket with the coupons attached, and by the other facts developed in the evidence tending to show what the real contract was; and here it is proper to say that a railroad passenger ticket does not ordinarily import a complete contract. It is in some sense like a check for baggage. It is issued by the carrier as the evidence of the right of the passenger to transportation between the points named on the face of the ticket. It is surely not as complete a contract in form as a bill of lading for the transportation of goods, and a bill of lading is everywhere recognized as a receipt as well as a

contract. In the case of *Steamboat Co. v. Brown*, 54 Pa. St. 77, speaking of a bill of lading, it is said: "On its face, it is but a memorandum, and not in form a contract *inter partes*. It is doubtless an instrument fitted for the occasions in which it is usually employed; and while what it clearly expresses may not be contradicted by oral testimony, unless under the qualification of fraud or mistake, yet there is no rule which excludes testimony to explain it, and to show what the real contract was, of which it is but a note or memorandum at best." And see *Quimby v. Vanderbilt*, 17 N. Y. 306. This court has determined that, where a contract is partly in writing and partly by verbal agreement, parol evidence may be introduced to show the portion of the contract not reduced to writing. *Singer Sewing Machine Co. v. Holcomb*, 40 Iowa, 43; *Keen v. Beckman*, 66 Iowa, 672.

Applying this rule to the evidence in this case, it appears that the Rock Island Railroad Company or its ticket agent was authorized to sell through tickets over the three other roads, and to collect and receive the full fare for the whole distance from Kansas City to Los Angeles. How this was divided among the said companies does not appear. So far as it appeared to Peterson, the purchaser of the tickets, it was a joint transaction. The ticket recognizes the right of the passenger to have baggage transported over the respective lines, and an attempt was made to limit the liability to one hundred dollars, but no reference is made to any several liability of any company forming the line, except the Rock Island Company. The Rock Island Company, as the agent of the other lines, had no authority to check baggage over them. This is apparent from the fact that the trunks were passed over the Rock Island road without question as to their weight, but, when they were rechecked by the Atchison, Topeka and Santa Fe Company at Kansas City, the sum of twenty-seven dollars on extra baggage was exacted by the company, and paid by Peterson,

and in consideration thereof the baggage was checked through to Los Angeles. This was, in effect, paying to all three of the companies for carrying extra baggage from Kansas City to the end of the journey. It appears that the trunks and Peterson and his family were all carried through to Los Angeles on the same train. It does not appear whether there was any change of passenger or baggage cars in the train. The checks delivered to Peterson at Kansas City imported an obligation on the part of the three companies to carry the baggage through to its destination. A check for baggage has the same elements of a contract as an ordinary railway passenger ticket. It is, to say the least, some evidence of the contract between the carrier and the traveler for the transportation of his baggage. *Anderson v. Railway Co.*, 65 Iowa, 131. An examination of the coupon attached to the ticket above set out will show that, at the foot of the coupon, the initials of all of the defendants appear. It is not claimed that these initials are not intended to represent the defendants. There is no evidence tending to show for what purpose these initials were placed there, but it is conceded they were on all the coupons. It is contended by counsel for appellees that these initials were placed upon the coupons to indicate the route pursued by the traveler. Counsel for appellant claim that they are signatures to a contract. In the absence of any evidence, and in construing the contract so far as it is written, and in connection with the facts above recited, we think the defendants ought not to complain if it be held that they imported a joint obligation upon the part of the defendants, except the Rock Island Company, which, by the express stipulation in the body of the ticket, is not bound for any failure beyond its own line. The appearance of these initial letters on all the coupons was, to say the least, an important fact, to be considered in determining whether, as to the last three roads in the line, there were three separate contracts or one joint contract ; and we can see no valid reason why it may

not be held that the contract, so far as the last three roads are concerned, was completed by what occurred at Kansas City and afterwards. It is true the Atchison, Topeka and Santa Fe Company was an intermediate carrier. But such a carrier may, by its contract, make itself liable for the safe transportation of the baggage through the entire route. *Beard v. Railway Co.*, 79 Iowa, 518.

It is important to understand just what question was determined by the district court. The direction to the jury to return a verdict for the defendants was, in effect, a holding that there was not sufficient evidence to submit to the jury to justify a verdict that the defendants were jointly liable. In other words, that the ticket, with the coupons attached, together with parol evidence, showed that four separate contracts were made, which made four causes of action, or one action against each company for spoliation of the baggage on its road only, and that there was, therefore, a misjoinder of causes of action. If this was correct, there could be no recovery against either company, because there was no evidence at what point of the line the trunks were unlocked and the property removed. The counsel for the plaintiff cited a large number of cases, which it is claimed hold that, under like facts, the several lines are held to be jointly liable, and other cases where the last carrier in the continuous line is held liable. The following are some of the authorities relied upon : *Laughlin v. Railway Co.*, 28 Wis. 204; *Brintnall v. Railway Co.*, 32 Vt. 665; *Hart v. Railway Co.*, 8 N. Y. 37; *Fairchild v. Slocum*, 19 Wend. 329; *Wolff v. Railway Co.*, 68 Ga. 653; *Railway Co. v. McIntosh*, 73 Ga. 532; *Barter v. Wheeler*, 49 N. H. 9; and *Harp v. The Grand Era*, 1 Woods, 184.

In the last above case the action was against an intermediate carrier, and in all the others the action was either against the receiving carrier or the last one in the line. In one of the cases—that of *Laughlin v. Railway Co.*—the action was against the last carrier.

There was no evidence at what point the goods were stolen, and the court held the defendant liable upon the presumption that the goods were stolen in the possession of the last carrier. In *Brintnall v. Railway Co.*, the plaintiff was permitted to recover of the receiving carrier, because, when the goods were shown to have been in its custody, it was incumbent on it to show that it had delivered the goods to the next carrier in the line. It may be said of all the cited cases that they rest mainly upon what is deemed presumptions. These presumptions are grounded upon the necessities of the cases, rather than upon any clear and well-defined legal grounds. Indeed, many of them are really grounded upon the thought that, where it is impossible for the owner to show upon which part of the whole line of travel the property was lost or stolen, it is incumbent on the defendant to show itself clear of the loss. In one of the cited cases ( *Smith v. Railway Co.*, 43 Barb. 225 ), it is said : "Unless this rule is to be applied to goods delivered, to be transported over several connecting railroads, there would be no safety to the owner. It would often be impossible for him to prove at what point, or in the hands of which company, the injury happened." Others of the cited cases hold the defendants liable upon grounds which are really based upon the thought that all of the connecting lines are jointly liable. This is true of the case of *Wolff v. Railway Co.*, 68 Ga. 653 ; and in *Railway Co. v. Fort*, 9 Am. & Eng. R. R. Cas. 392, and *Railway Co. v. Ferguson*, 9 Am. & Eng. R. R. Cas. 395, the supreme court of Texas holds that, when a person purchases a through ticket over several railroads, and procures a corresponding check for his baggage, and the baggage is lost, each carrier is the agent of all the others, and is liable to any damage to the baggage on whatever part of the line the damage was done. The case of *Harp v. The Grand Era*, *supra*, is to the same effect.

On the other hand, we are cited by counsel for appellee to a large number of cases which determine

that, where several connecting companies form a through line, each operating its own road, and through tickets with coupons attached are sold over the entire route for a single fare, there is no joint liability by reason thereof, and each carrier will only be liable for defaults occurring on its own road, except that in some states the receiving carrier is presumed to contract for carriage over the entire route. Among the cases cited are the following: *Ellsworth v. Tartt*, 26 Ala. 733; *Hood v. Railway Co.*, 22 Conn. 12; *Knight v. Railway Co.*, 56 Me. 240; *Croft v. Railway Co.*, 1 McArthur, 492; *Kessler v. Railway Co.*, 61 N. Y. 538; *Railway Co. v. Roach*, 35 Kan. 740; 12 Pac. Rep. 93. The length of this opinion forbids that we should review these cases.

After a very full and careful examination of the subject, Mr. Hutchinson, in his work on carriers (page 131), says: "From these cases it may be deduced: *First*, that where carriers over different routes have associated themselves under a contract for a division of the profits of the carriage in certain proportions, or of the receipts from it, after deducting any of the expenses of the business, they become jointly liable as partners to third persons; but that, where the agreement is that each shall bear the expenses of his own route, and of the transportation upon it, and that the gross receipts shall be divided in proportion to distance or otherwise, they are partners neither *inter se* nor as to third persons, and incur no joint liability." We think this is a fair statement of the rule of joint liability which is supported by the great weight of authority.

It only remains to be determined whether the evidence in this case authorized the jury to find a joint liability. We think it did. It is true there is no express proof that these defendants were partners. But it is to be remembered that the plaintiff made the best proof of which her case was capable. The facts as to the relation which these companies sustained to each other, and the impossibility of proving where or on which road the

trunks were pillaged ; the receipt of the whole of the
fare by their joint agent, the Rock Island Railway
Company ; the collection of the charge for extra bag-
gage at Kansas City ; and the fact that the trunks were
checked through and carried to the end of the journey
on the same train with Peterson and his family ; and
the initials of all of the companies to each coupon,
authorized a finding that the undertaking was a joint
transaction, at least so far as the rights of the passen-
gers to have their baggage safely carried were involved.
In our opinion, the cause ought to have been submitted
to the jury.                              REVERSED.