Argued March 10; decided September 21, 1896.

## AMERICAN CONTRACT COMPANY *v.* BULLEN BRIDGE COMPANY.

[46 Pac. 138.]

1. WRITTEN CONTRACT — PAROL EVIDENCE.*— Where the written memorandum of an agreement is incomplete or ambiguous, parol evidence is admissible to show the facts; thus, where one party offered in writing to "furnish you crushed rock" at a certain place and price, and the written answer stated "your proposal to furnish us with crushed rock is accepted," the writings did not constitute a complete contract, and parol evidence should have been allowed to show the amount of rock meant by plaintiff.

2. MEASURE OF DAMAGES FOR BREACH OF CONTRACT.— The measure of damages for breach of a contract to accept and pay for certain material is the difference between the contract price and what it would have cost the party contracting to furnish it to perform his obligation.

3. PLEADING — PAROL AGREEMENT.— In an action for breach of a contract, a part only of which has been reduced to writing, plaintiff should allege execution of a parol agreement.

From Multnomah: E. D. SHATTUCK, Judge.

This is an action by the American Bridge and Contract Company to recover from the Bullen Bridge Company and J. E. Willard damages for the alleged breach of a contract. The plaintiff alleges, in substance, that the defendants, having entered into a contract with the Bridge Commission of the City of Portland, whereby they agreed to furnish the necessary material and construct across the Willamette River at that city a bridge, the specifications for which demanded crushed rock for the concrete filling to be used in the piers supporting

the structure, represented to the plaintiff that it would require for such purpose between three thousand five hundred and four thousand cubic yards of crushed rock, and applied for terms upon which it would furnish the same; that the reasonable value of such material was one dollar and seventy-five cents per cubic yard, but plaintiff, in consideration of being allowed to supply the quantity required, proposed to furnish the same on scows at the bridge site at one dollar and thirty-five cents per cubic yard, to be measured in bulk on the barge, allowing twenty-four hours for unloading each sixty cubic yards thereof, which offer the defendants accepted, with the proviso that the material should be acceptable to the engineer in charge of the work; that the plaintiff immediately entered upon the performance of the contract, and furnished for and delivered to the defendants six hundred and eighty-three yards of such material, and was ready, able, willing, and offered to furnish the balance thereof, but the defendants refused to receive or accept, or to allow the plaintiff to furnish or deliver, any more of said crushed rock; that the quantity of crushed rock required to fill said piers was three thousand five hundred yards, and, after supplying the amount so furnished, there remained two thousand eight hundred and seventeen cubic yards, which, by reason of the breach of the contract, the plaintiff was prevented from delivering. It is also alleged that the profit which could have been made on such balance, if accepted, was sixty-five cents per cubic yard, and that by reason of the defendants'

refusal to accept the same, plaintiff suffered a loss of one thousand eight hundred and thirty-one dollars and five cents, for which it demanded judgment.

The defendants, after denying the material allegations of the complaint, allege, in substance, that on March thirteenth, eighteen hundred and ninety-three, the said plaintiff submitted to them a proposition in writing in substance as follows, to wit:—

"PORTLAND, OREGON, March 13, 1893.

"*Bullen Bridge Company* — The undersigned will furnish you crushed rock on scows at bridge site for one dollar and thirty-five cents per cubic yard, measured in bulk on barge, and allow you twenty-four hours for unloading each sixty cubic yards.

"Yours truly,

"AMERICAN BRIDGE AND CONTRACT COMPANY,
        "By W. S. CHAPMAN, Secretary."

They allege that they accepted the said offer on the day following in writing as follows, to wit:—

"PORTLAND, OREGON, March 14, 1893.

"*The American Bridge and Contract Company* — GENTLEMEN: Your letter of the thirteenth, proposing to furnish us crushed rock on scows at bridge site for one dollar and thirty-five cents per cubic yard, measured in bulk on barges, and allow us twenty-four for unloading each sixty cubic yards, has been received and the proposal is hereby accepted, providing, however, that the crushed stone is to be

acceptable to the engineer in charge of bridge construction.

> "Yours truly,
> "The Bullen Bridge Company,
> "J. E. Willard, Agent."

It is then averred that in pursuance of the said proposition and acceptance thereof, and not otherwise, the plaintiff furnished six hundred and eighty-three cubic yards of crushed rock as in the complaint stated; that they accepted the same, and paid said plaintiff therefor at the rate of one dollar and thirty-five cents per cubic yard; and that the quantity so received and paid for was all that was acceptable to the engineer of the said bridge commission in charge of the construction of the said bridge.

The plaintiff, replying, admitted the making and acceptance of said offer, but denied that they constituted the contract under which the material was delivered, or that the amount paid was in full or any satisfaction of the rock furnished the defendants, or that the quantity delivered was all said rock which was acceptable to said engineer. The issues having been thus joined, the court, upon motion, gave judgment upon the pleadings in favor of defendants, from which plaintiff appeals.

Reversed.

For appellant there was a brief by *Messrs. Mitchell, Tanner and Mitchell,* with an oral argument by *Mr. Albert H. Tanner.*

For respondent there was a brief by *Messrs. Dolph, Mallory and Simon,* with an oral argument by *Mr. Rufus Mallory.*

Opinion by MR. CHIEF JUSTICE MOORE.

1. The question presented for consideration by this appeal is whether the offer and acceptance, under the allegations of the pleadings, constitute the entire contract between the parties; for if so, no ambiguity appearing therein, evidence outside the writings would be inadmissible to explain the terms thereof. "A contract," says Mr. Chief Justice MARSHALL in *Sturges* v. *Crowninshield,* 17 U. S. (4 Wheat.), 197, "is an agreement in which a party undertakes to do or not to do a particular thing." Tested by this definition, it will be observed that the offer and its acceptance do not constitute an undertaking on the part of either party to do anything, except to pay and accept one dollar and thirty-five cents per cubic yard for crushed rock; for, there being no obligation to deliver or accept any given quantity of material, upon which the offer to pay and accept depended, it follows that there was no undertaking to do anything, and hence no contract existed between the parties, if it must depend upon the written evidence thereof. But the plaintiff delivered and the defendants accepted six hundred and eighty-three cubic yards of crushed rock, thus clearly showing that some contract existed between them, and, this being so, the question is narrowed to a consideration of whether evidence *aliunde* the

writings is admissible to prove the terms of such contract. The rule of law is settled beyond controversy that parol contemporaneous evidence is inadmissible to contradict or vary the terms of a valid written instrument (1 Greenleaf on Evidence, § 274); but this rule does not apply in cases where a part only of the contract was reduced to writing: 1 Greenleaf on Evidence, § 284; 2 Parsons on Contracts, *553; Wharton on Evidence, § 1015. In *Cobb* v. *Wallace*, 5 Cold. 539, (48 Am. Dec. 435), the defendants, in order to transport a quantity of coal from Howesville, Kentucky, to Nashville, Tennessee, hired plaintiff's barge, agreeing by parol to return it as soon as the voyage could be made, and gave plaintiffs' agent a written memorandum to the effect that they would pay three dollars per day for its use until it should be returned in good order, without stating therein when this should be done. The defendants, after discharging the coal, retained the barge, and used it in transporting wood, and when returning it to plaintiff it was seized and detained by persons in the military service of the United States. In an action to recover its value and for the hire thereof, the trial court charged the jury, in effect, that under the contract the defendants had it in their option to say when the contract was at an end, but so long as they paid the stipulated hire, they might continue to use it, and that the contract for its use would not terminate until they so elected. The court in reversing the judgment say: "The written memorandum in this case, so far as it includes the contract, is merely an agree-

ment to pay for the hire of the barge at a certain rate, until she should be returned to the plaintiff. And parol evidence of the circumstances under which and the purpose for which it was hired, and of the terms of the previous verbal contract as to the length of time during which it might be retained and employed, does not contradict or vary the terms of the written instrument."

In *Singer Sewing Machine Company* v. *Holcomb,* 40 Iowa, 33, it was held that parol evidence was admissible to prove that, upon the performance of the conditions of a written lease of a sewing machine, which provided for the payment within a given time of an amount equal to the value thereof, the title vested in the lessee. In *Keen* v. *Beckman,* 66 Iowa, 672, (24 N. W. 270,) the plaintiff brought an action to recover a balance alleged to be due upon the following instrument in writing:—

"$700.                CLAYTON, IOWA, June 1, '82.

"Received of Mrs. C. Keen seven hundred dollars on deposit, in currency.

"(Signed): BECKMAN BROTHERS AND COMPANY."

The defendants, answering, alleged that they were merchants, and that the money for which the receipt was given had been deposited with them for the accommodation of the plaintiff, in pursuance of an oral agreement to keep it in their safe without compensation, or any right to use the same; that while so being kept their safe was broken open by some persons unknown, and the said money felo-

niously carried away, without any fault or neglect on their part. A demurrer to this answer, upon the ground that it set up as a defense a parol agreement altering the written contract, having been sustained, the court, in reversing the judgment, says: "It is a familiar rule that a contract may be partly reduced to writing, and partly exist by verbal agreement. In such a case the whole contract may be shown, and the rule that a written contract cannot be varied by oral evidence is not violated by the introduction of such evidence showing the parts of the contract not reduced to writing.". So too in *Peterson* v. *Chicago Railway Company*, 80 Iowa, 92, (45 N. W. 573,) it is held that parol testimony is admissible to show the terms of an agreement evidenced in part by a railroad passenger ticket which does not import a completed contract. In *Steamboat Company* v. *Brown*, 54 Pa. St. 77, it was held that a bill of lading was on its face but a memorandum, and not in form a contract *inter partes*, and that parol evidence was admissible to interpret the terms of the contract, so as to qualify the tribunal passing upon the writing to interpret it according to the intent of the parties. In *Nisson* v. *Genesee Gold Mining Company*, 104 N. C. 309, (10 S. E. 512,) it is held that, where it is found as a fact that a contract was partly in writing and partly oral, parol testimony is admissible to prove the oral part.

"If the instrument," says Dargan, C. J., in *West* v. *Kelly's Executors*, 19 Ala. 353, (54 Am. Dec. 192,) "is perfect and complete, that is, if it contains the entire contract, then the rule is inflexible that

parol evidence cannot be received to add another
term to the written instrument, or to change its
legal effect.  *  *  *  But if it be apparent that
the instrument in writing contains but a part of
the agreement entered into by the parties, then parol
proof may be received to prove the entire contract,
otherwise the contract could not be brought before
the court.  *  *  *  But the parts of the agree-
ment proposed to be proved by parol must not be
inconsistent with, or repugnant to, the intention of
the parties, as shown by the written instrument; for,
to receive parol proof of a part not reduced to writ-
ing, which is directly repugnant to the intention of
the parties, as expressed in the written instrument,
would at once annul the rule that parol evidence
cannot be received to contradict or vary the
terms of a written agreement." In *Domestic Sewing
Machine Company* v. *Anderson*, 23 Minn. 57, the de-
fendant gave to the plaintiff a written instrument
acknowledging the receipt of a sewing machine,
tools, etc., which were to be returned upon demand,
but until such demand was made the defendant
agreed to make certain payments, and to take good
care of the machine. The defendant having, upon
demand, refused to deliver to plaintiff the machine
and other articles, an action was brought to recover
the same, at the trial of which it was claimed by
plaintiff that the written memorandum constituted
the contract between the parties, and was the ex-
clusive evidence of their rights in respect to the
subject matter; but it was held that the defendant
might show by parol evidence the nature of the oral

agreement of which the written memorandum formed but a part. "The rule," says Harrison, J. in *Sivers* v. *Sivers*, 97 Cal. 518, 32 Pac. 572, "which excludes evidence affecting the terms of a written instrument, does not apply when the parties have not incorporated into the instrument all the terms of their agreement, and when the evidence offered or the agreement sought to be proved is not inconsistent with the terms embodied in the instrument. Evidence of a contemporaneous oral agreement as to any matter upon which the instrument is silent, and which is not inconsistent with its terms, can not be said to contradict or vary the terms of the written instrument."

In *Church* v. *Proctor*, 66 Fed. 240, (13 C. C. A. 426,) the parties entered into a written agreement which, so far as it relates to the matter in dispute, is as follows:—

"Tiverton, R. I., August 3, 1888.

"We agree to pay Joseph Church and Company for what menhaden they land at Still's Wharf, Tiverton, Rhode Island, one dollar per barrel, cash on demand * * *.    J. O. Proctor, Jr."

"Tiverton, R. I., August 3, 1888. ·

"We agree to furnish menhaden to J. O. Proctor, Jr., alongside Still's Wharf, Tiverton, Rhode Island, at one dollar per barrel, from now until he gets through slivering for the year eighteen hundred and eighty-eight.

"Joseph Church and Company."

In an action to recover damages for an alleged
breach of the agreement, it was contended in the
trial court that the written contract did not con-
tain the entire oral agreement between the parties,
and evidence was introduced tending to show that
Church and Company had agreed to deliver at least
one hundred barrels of menhaden on each day dur-
ing the slivering season of eighteen hundred and
eighty-eight.   Mr. Justice ALDRICH, in reviewing the
judgment on appeal, says: " We think the writings,
taken together, constitute a complete legal engage-
ment, and that evidence of an express oral agree-
ment between the parties at an earlier day was in-
competent, for the reason that it reads into the
written contract an element not necessarily a part
thereof.   It seems to us that the writings constitute
one of those common agreements whereby one per-
son agrees to supply for a stated price, and another
person agrees to buy, all the articles in a certain
line required for his family's use or for his busi-
ness during a certain period.   Such a contract is
not indefinite, for the reason that the requirements
of the family or business may be approximately
known, and the quantities are to be determined by
the reasonable demands of such family or business.
By the terms of the contract expressed in writing,
Church and Company in effect agreed to deliver,
and Proctor in effect agreed to receive, such quanti-
ties of menhaden as might be reasonably required
by his business, to be delivered and received dur-
ing the period and at the place and price desig-
nated in the contract.   Proctor was not bound to

receive, and Church and Company were· not bound to deliver, more than was reasonably required by the business to which the contract had reference. From the nature of the subject matter to which the contract related, the quantity was necessarily uncertain. Proctor's requirements were subject to the fluctuations incident to the season and the demands of the market, and Church and Company's catch was subject to the weather and other elements of uncertainty incident to their enterprise. The undertakings of the parties, therefore, like all contracts of this character, were subject to the contingencies which ordinarily affect catching and using fresh fish. Interpreting the writings, therefore, with reference to the subject matter, and the understood situations of the parties, the contract was complete on its face, in the sense, of course, that it was as complete as contracts regulating undertakings of this character can well be made. The meaning was that one of the parties should receive such quantities as his business required, and the obligation of the other party was to answer such requirements, but in no event to exceed their catch, as their undertaking was subject to the contingencies ordinarily incident to an enterprise of the character of that in which Church and Company were engaged. In such sense, the contract was a complete obligation, and evidence of a prior oral agreement to deliver daily a specific quantity of fish was inconsistent with its meaning, and therefore incompetent."

If the offer and acceptance in the case at bar constitute a complete contract, and the rule an-

nounced in the preceding case be applicable thereto, the plaintiff agreed to furnish and the defendants to accept such an amount of crushed rock as might be necessary to complete the concrete filling of the piers; and, as an issue was made upon the quantity required for that purpose, the court erred in rendering judgment on the pleadings. But if the writings constitute a part only of an oral agreement entered into between the parties, parol evidence was admissible to prove the terms and conditions of that part of the agreement not embraced within or in conflict with the offer and its acceptance, and hence the judgment complained of was erroneous. See the compilation of authorities on this subject in the notes to *Ferguson* v. *Rafferty*, 6 L. R. A. 33.

2.   A party to a contract is entitled to recover from the party who violates it an amount in damages equal to the profits he would have made by the performance of the agreement, the measure of which is the difference between the contract price agreed upon and what it would have cost the party to perform his obligation: 1 Sutherland on Damages (2d ed.), § 63; *Morrison* v. *Lovejoy*, 6 Minn. 224; *United States* v. *Speed*, 75 U. S. (8 Wall.), 77; *Hoy* v. *Gronoble*, 34 Pa. St. 9 (75 Am. Dec. 628); *Masterson* v. *Mayor of Brooklyn*, 7 Hill, 61 (42 Am. Dec. 38).

3.   When a contract consists of an oral agreement, a part of which only has been reduced to writing, it is proper to allege in the complaint, as a basis for the recovery of damages resulting from

29 OR.—38.

its breach, the execution of a parol agreement: 4 Ency. of Pleading and Practice, 922; *Louisville Railway Company* v. *Reynolds*, 118 Ind. 170 (20 N. E. 711). Having complied with this rule, the action cannot be defeated by setting out copies of that part of the agreement which is in writing. It follows that the judgment is reversed and the cause remanded for trial.                REVERSED.