## McGUIRE v. GREAT NORTHERN RY. CO. et al.

### (Circuit Court, N. D. Iowa, C. D.   May 11, 1907.)

### No. 296.

**1. REMOVAL OF CAUSES—MOTION TO REMAND—ALLEGED FRAUDULENT JOINDER OF DEFENDANTS.**

On a motion to remand a cause removed by one of a number of defendants, the merits of the controversy can be considered only for the purpose of ascertaining the real nature of the alleged cause or causes of action against the several defendants, and whether or not there has been a fraudulent joinder of parties defendant for the purpose of defeating the jurisdiction of the federal court.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 42, Removal of Causes, § 227.

Fraudulent joinder of parties to prevent removal, see note to Offner v. Chicago & E. R. Co., 78 C. C. A. 362.]

**2. CARRIERS—LOSS OF GOODS—LIABILITY OF CONNECTING CARRIERS.**

The fact that the destination of a shipment received by a railroad for transportation is beyond its own line, or that it was received from another carrier to be transported to a point on its own line, does not create any joint responsibility between the connecting carriers, where the shipment over each is under a separate contract which limits its liability for loss or injuries to such as may occur on its own line.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 9, Carriers, §§ 817, 818.]

**3. REMOVAL OF CAUSES—SEPARABLE CONTROVERSY—FRAUDULENT JOINDER OF DEFENDANTS.**

In an action in a state court, a railroad company of the state, a local station agent on its line, and a railroad company of another state were joined as defendants. The petition alleged that through the joint negligence of defendants a shipper was furnished an unfit car at the local station in which to ship certain goods and to transport the shipper from such station to a point on the line of the second railroad company; that both companies carried the shipper and his property in such car to a point on the line of the second company, where they negligently set the car on fire, and thus caused the death of the shipper and the destruction of his property. On a motion to remand, after removal of the cause by the nonresident company on the ground of separable controversy and fraudulent joinder, treated also as a plea to the jurisdiction, it was shown that the agent who furnished the car was not the agent of, and had no connection with the removing, defendant; that the shipment was received by the local company under a written contract for its carriage only to a connection with the road of the second company, and limiting the liability of the carrier to loss or injury accruing on its own line; that the car was safely delivered to the second company, which received and forwarded it under a similar contract then made between such company and the shipper. The cause of the fire was neither alleged nor shown. *Held,* that the cause of action stated in the petition, construed in the light of such facts which were known to plaintiff, was not joint, and that the joinder of the defendants must be held to have been for the purpose of defeating the jurisdiction of the federal court.

[Ed. Note.—Separable controversy, see note to Robbins v. Ellenbogen, 18 C. C. A. 86; Mecke v. Valleytown Mineral Co., 35 C. C. A. 155.]

**4. SAME.**

The rule that where a removal is sought by one of two or more defendants upon the allegations of the plaintiff's pleading alone, the cause of action as therein stated is the test of removability, and if that is joint in character, and there is no showing of want of good faith on the part of the plaintiff in stating his cause of action, the question of proper joinder

is not to be tried in the removal proceedings, has no application where it is alleged and shown by the nonresident defendant that the plaintiff has purposely stated a fictitious cause of action against him and another jointly to prevent a removal, but in such cases the duty of protecting the right of removal to one having such right is strictly enjoined upon the Circuit Courts.

## On Plea to the Jurisdiction and Motion to Remand to State Court.

This action was commenced in the district court of Iowa in and for Palo Alto county, by the plaintiff, a citizen of Iowa, as administratrix of the estate of P. F. McGuire, deceased, against the Minneapolis & St. Louis Railroad Company, hereinafter called the "Minneapolis Company," a corporation of Iowa, C. A. Ziehlke, a citizen of Iowa, and the Great Northern Railway Company, a corporation of Minnesota, to recover damages for the death of said deceased, and the destruction of certain of his personal property, which it is alleged were caused by the joint neglect of the several defendants.

The Great Northern Railway Company in due time removed the cause to this court, upon the alleged ground that there is a separable controversy between it and the plaintiff, to the determination of which the other defendants are not necessary or proper parties, but have been fraudulently joined by the plaintiff as defendants with the Great Northern Company for the sole purpose of preventing that company from removing the cause to this court. The plaintiff has filed a motion to remand, upon the grounds that there is no separable controversy between her and either defendant, that she has a cause of action against all of the defendants jointly, that the action is brought against all of them in good faith, and that this court is without jurisdiction of the suit. The motion to remand was ordered by the court to stand also as a plea to its jurisdiction, and that the evidence in support of the petition to remove and such plea be taken in the form of depositions. The evidence has been so taken, and the matter is now before the court upon the pleadings and such evidence.

The original petition, as amended in the state court, alleges, in substance: That the Minneapolis Company and the Great Northern Company are railroad corporations; that defendant Ziehlke is and was their agent at Ayrshire, in Palo Alto county, this state; that in March, 1906, the deceased, P. F. McGuire, applied to the defendant Ziehlke, as agent for said railroad companies, for a car in which to ship certain household goods, live stock, and hay and straw for such live stock, from Ayrshire, to McCanna, in the state of North Dakota, and in which car he was also to ride with such property. The charge is general against all of the defendants that they furnished an unfit car in which to make such shipment, and that both companies together carried the deceased and his property therein from Ayrshire to some point on the Great Northern line, where together they negligently set the car and shipment on fire, and thus caused the death of McGuire and the destruction of his property while being carried on that line.

From the testimony it appears that the Minneapolis Company operates a line of railroad through Ayrshire, a village of some 300 or 400 inhabitants, in Palo Alto county, this state, thence to Minneapolis, in the state of Minnesota, and defendant Ziehlke is and was in March, 1906, its agent at Ayrshire; that there is no other railroad at such village; that the Great Northern Company is and then was a Minnesota corporation, operating a line of railroad from Minneapolis, in that state, northwesterly into and through the state of North Dakota, and McCanna is a station on its line of road in that state; that it had no railroad in Palo Alto county, Iowa, and no office or agency at Ayrshire, or elsewhere in that county; that the deceased then lived at or near the village of Ayrshire, and was about to move his family, household goods, and other property to McCanna, N. D., and applied to defendant Ziehlke at Ayrshire for a car in which to ship said property to McCanna; that Ziehlke procured a proper car for such purpose, but, before the deceased was ready to load his property, let some other shipper have it, and furnished to McGuire another car of the Minneapolis Company, which it is claimed by plaintiff was old, out of repair, unfit, and unsafe in which to make such shipment, and Ziehlke told McGuire that he could take that car or none; that McGuire did load his property into such car, and started with it over the line of the Minneapolis Company for Mc-

Canna.' Before starting, Ziehlke, as agent for the Minneapolis Company, gave to McGuire a written contract for the carriage of the property by the Minneapolis Company from Ayrshire to the end of its line, which contract is as follows:

"The Minneapolis & St. Louis Railroad Company.

"Live Stock Contract.

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*

"See current rules governing the passage of man in charge of live stock shipments.            W. M. Hopkins, General Freight Agent.

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*

"Ayrshire, Iowa, Station, Mch. 21, 1906.

"The Minneapolis & St. Louis Railroad Company has this day received from P. F. McGuire, one car emigrant movables (more or less) to be transported over the lines of this company only, from Ayrshire Iowa Station, to point of delivery to the next connecting carrier if the destination of said shipment is not upon the railroad of this company, or if continuous carriage to destination is not for any reason made over this company railroad, and there delivered to the connecting carrier for transportation to or towards destination at the rate of tariff and switching charges, subject to the published rules, and regulations of said railroad company, and upon the following conditions:

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*

"The shipper agrees to load, unload, reload and feed said stock at his own expense and risk; to water and care for the same while it is in stock yards waiting shipment, and while on the cars, or at feeding, and transfer points, or where it may be unloaded for any purpose; to keep the cars securely locked and fastened; and to prevent its escape therefrom.

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*

"The railroad company shall not be liable for the loss, delay or injury of any property carried under this contract, nor for injuries sustained by any person in charge thereof, except upon its own railroad; its liability shall cease upon making delivery to its connecting carrier.

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

"The above terms, conditions and limitations shall inure to the benefit of all carriers by whom the said property is transported.

                     "C. A. Ziehlke, Agent.

                     "P. F. McGuire, Shipper.

"Note.—This contract must be executed in duplicate, and signed both by shipper and agent. One copy must be forwarded to the auditor at Minneapolis, the other should be marked 'Duplicate' and delivered to the shipper.

"The words 'and there delivered to the connecting carrier for transportation to destination' should be ruled out, if the shipment is destined to a point upon the line of this company."

Indorsed on back of contract:

           "The Minneapolis & St. Louis Railroad Company,

                 "Live Stock Contract.

"Nos. and Initials of Car M. & St. L. 5190.

"Parties actually in charge of, and accompanying within described stock are required to write their own names in ink here.

"We agree to the within named conditions.            P. F. McGuire.

"Parties actually in charge have written their own names above.

                     "C. A. Ziehlke, Agent,

                       "Ayrshire Station."

The car, property, and the deceased were carried under this contract in safety by the Minneapolis Company alone to the Minnesota Transfer, which is its northern terminus and the place where it connects with the Great Northern Company. At that place the shipment was delayed a day for the purpose of making some repairs to the car. The Great Northern Company then gave to McGuire a written contract for the carriage of the car and property over its line of railroad to its destination at McCanna, which contract is substantially

the same as that of the Minneapolis Company, is signed by the agent of the Great Northern Company and by McGuire, and was good for his passage with his property from the Minnesota Transfer to McCanna, N. D. The car was put into a train of the Great Northern Company and started for its destination; McGuire, his son, and another person, riding in the car with the live stock and other property. About midnight after leaving Fargo, for McCanna, the younger McGuire awoke and discovered that the hay and straw in the car were on fire. He could not open the side doors of the car, because, as claimed by the plaintiff, of their defective and unsafe condition, and he got out of the car through one of its end doors, receiving some injuries in so doing; but his father and the other person and the live stock were burned to death, and the other property destroyed by fire. It is not alleged in the petition, nor does it clearly appear from the testimony, how the fire originated.

Ziehlke was not the agent of the Great Northern Company, but he gave McGuire the rate for the shipment over the line of the Minneapolis Company from Ayrshire to the Minnesota Transfer, and told him what the rate would be over the line of the Great Northern Company to McCanna: but each road fixed the rate for hauling the car and property over its own line. The freight was not paid to either company, but was to be collected at the destination of the shipment. Ziehlke sometimes sold tickets to passengers from Ayrshire to points on the line of the Great Northern Company, but he kept no such tickets for sale at Ayrshire, and when such tickets were required procured them for such purpose.

E. A. Morling and Kelly & Kelly, for plaintiff.

J. L. Kennedy, for the Great Northern Railway Company.

REED, District Judge (after stating the facts). The merits of the controversy may be considered only for the purpose of ascertaining the real nature of the alleged cause or causes of action of the plaintiff against the several defendants, and whether or not there has been a fraudulent joinder of parties defendant with the Great Northern Company for the purpose of defeating the jurisdiction of this court. Alabama Great Southern Railway Co. v. Thompson, 200 U. S. 206, 26 Sup. Ct. 161, 50 L. Ed. 441; Wecker v. National Enameling Co., 204 U. S. 176, 27 Sup. Ct. 184, 51 L. Ed. —.

The petition of plaintiff, as amended in the state court, is very general in its allegations. It is clearly vulnerable to a motion for more specific statement, and it is urged in behalf of the Great Northern Company that its allegations are thus indefinitely and generally made to conceal the real facts which caused the death of Mr. McGuire and the destruction of his property, and to make an apparent case upon paper against all of the defendants jointly, for the fraudulent purpose of preventing the Great Northern Company from removing the cause to this court.

The petition alleges, generally, and it is the contention of the plaintiff, that there was a joint undertaking of the two companies to furnish the deceased with a suitable car in which to ship his property and carry him from Ayrshire, in Palo Alto county, this state, to McCanna, N. D., and that both companies are liable for the failure to perform this undertaking; that defendant Ziehlke acted as agent of both companies in procuring a car for McGuire, and did procure for him a safe and fit car for such purpose, but wrongfully diverted it to another shipper and furnished a defective and unfit car of the Minneapolis Company in lieu thereof to McGuire, and for so doing he is also liable with the two companies for their alleged failure to carry deceased and

his property in safety to their destination; and that all of the defendants are therefore jointly and severally liable to the plaintiff. But the diversion of the first car to another shipper cannot be said to be the direct or immediate cause of the burning of the car that was furnished to McGuire, and no right of action for the burning of the car can rightly be predicated upon such diversion, conceding it to be wrongful, against any of the defendants. The petition does not state any facts, aside from its legal conclusions, from which it can be inferred that there was a joint undertaking of the two companies to furnish a car and carry deceased or his property therein to McCanna, and the testimony wholly fails to show any such undertaking. It is undisputed upon the testimony that the Great Northern Company had no line of railroad at Ayrshire, or at any other place in Palo Alto county, and no office or agency in that county; that Ziehlke was not its agent for any purpose in the matter of procuring this car, or in making this shipment; that its first knowledge of the shipment was when it was delivered to it at the Minnesota Transfer, to be carried over its own line to McCanna; that the Minneapolis Company alone, through Ziehlke, as its agent, furnished the car to McGuire; and that that company carried him and his property therein over its own line in safety to the Minnesota Transfer, where it was delivered to the Great Northern Company. The action of the Minneapolis Company in thus furnishing the car, and carrying the deceased and his property therein over its own line, was an undertaking upon its part distinct and separate from that of the Great Northern Company to carry them over its line. The two companies did not act together in any way, either as partners or as joint carriers; but each received and carried the shipment over its own line under its separate written contract with the deceased therefor, and neither company was the agent, or liable for the acts, of the other in so doing. True, the destination of the car was McCanna, N. D., a station upon the line of the Great Northern Company, and beyond that of the Minneapolis Company; but that of itself does not show a joint undertaking of the two companies to carry the shipment to that place. Myrick v. Michigan Central Ry. Co., 107 U. S. 102, 1 Sup. Ct. 425, 27 L. Ed. 325; Pennsylvania Ry. Co. v. Jones, 155 U. S, 333, 15 Sup. Ct. 136, 39 L. Ed. 176; Peterson v. Railway Co., 80 Iowa, 92, 45 N. W. 573; Root v. Great Western Ry. Co., 45 N. Y. 527; Ortt v. Railway Co., 36 Minn. 398, 31 N. W. 519.

In Myrick v. Michigan Central Railway Company, above, it is said:

"A railroad company is a carrier of goods for the public, and, as such, is bound to carry safely whatever goods are intrusted to it for transportation, within the course of its business, to the end of its route, and there deposit them in a suitable place for their owners or consignees. If the road of the company connects with other roads, and goods are received for transportation beyond the termination of its own line, there is superadded to its duty as a common carrier that of a forwarder by the connecting line; that is, to deliver safely the goods to such line—the next carrier on the route beyond. This forwarding duty arises from the obligation implied in taking the goods for the point beyond its own line. The common law imposes no greater duty than this. If more is expected from the company receiving the shipment, there must be a special agreement for it. This is the doctrine of this court, although a different rule of liability is adopted in England and in some of the states. As was said in Railroad Company v. Manufacturing Company:

" 'It is unfortunate for the interest of commerce that there is any diversity of opinion on such a subject, especially in this country; but the rule that holds the carrier only liable to the extent of his own route, and for the safe storage and delivery to the next carrier, is in itself so just and reasonable that we do not hesitate to give it our sanction.' 16 Wall. 318, 324."

The separate contracts in writing of the two companies with the deceased, to carry him and his property over their respective lines only, are substantially the same, are each signed by the deceased, and were accepted by him for his own passage over each of the roads, and the plaintiff cannot, in the absence of fraud or mistake in procuring the contracts from the deceased, neither of which is alleged, be permitted to say that the deceased did not know their contents or understand their meaning. Insurance Company v. Railroad Co., 104 U. S. 146–155, 26 L. Ed. 679; Mulligan v. Illinois Central Ry. Co., 36 Iowa, 181, 14 Am. Rep. 514. The contracts, therefore, conclusively establish that the undertaking of each of the companies with the deceased to carry him and his property was several, and that the Minneapolis Company limited its liability for injuries in carrying them to such as might occur upon its own line. This it could lawfully do. Insurance Co. v. Railroad Co., 104 U. S. 146–154, 26 L. Ed. 679; Myrick v. Michigan Central Ry. Co., 107 U. S. 102–108, 1 Sup. Ct. 425, 27 L. Ed. 325; Southern Pacific Co. v. Interstate Commerce Com., 200 U. S. 536–554, 26 Sup. Ct. 330, 50 L. Ed. 585; Mulligan v. Illinois Central Ry. Co., 36 Iowa, 181, 14 Am. Rep. 514; Peterson v. Railway Co., 80 Iowa, 92, 45 N. W. 573; Ortt v. Railway Co., 36 Minn. 398, 31 N. W. 519.

There is an entire absence of any evidence that there was any undertaking, oral or written, by the Minneapolis Company, to carry the deceased beyond its own line, or that the Great Northern Company is in any way responsible for any act of Ziehlke, or the Minneapolis Company in furnishing the car to McGuire. These facts were fully known to plaintiff and her counsel before the suit was commenced, and the conclusion is unavoidable that the allegations of the joint undertaking of the two companies, and of their joint negligence in handling the car upon the line of the Great Northern Company, are wholly without support in the testimony, and that such allegations were made only for the purpose of preventing the Great Northern Company from exercising its right of removal of the cause from the state court.

It is true that the Supreme Court holds that when a plaintiff in good faith prosecutes his suit as upon a joint cause of action, and a removal is sought alone upon the allegations of the plaintiff's petition, the cause of action as therein stated is the test of removability, and if that is joint in character, and there is no showing of want of good faith on the part of the plaintiff in stating his cause of action, the question of proper joinder is not to be tried in the removal proceedings, and the case must be held to be that which the plaintiff states in setting forth his cause of action. But this rule has no application where it is alleged and shown by the nonresident defendant that the plaintiff has purposely stated a fictitious cause of action against him and another jointly, to prevent a removal of the cause to the federal court. In such cases the duty is strictly enjoined upon the Circuit Courts of protecting the

right of removal to one having such right, as well as to deny the removal when the right to do so does not exist. Alabama Great Southern Co. v. Thompson, above.

In Wecker v. National Enameling Co., 204 U. S. 176, 27 Sup. Ct. 184, 51 L. Ed. —, it is said:

"While the plaintiff, in good faith, may proceed in the state courts upon a cause of action which he alleges to be joint, it is equally true that the federal courts should not sanction devices intended to prevent a removal to a federal court, where one has that right, and should be equally vigilant to protect the right to proceed in the federal court as to permit the state courts, in proper cases, to retain their own jurisdiction."

To deny the jurisdiction of this court in this case would be to sanction a device that is thus condemned by the Supreme Court.

The question has been considered upon the cause of action as stated by the plaintiff in her petition: Whether or not a cause of action upon other grounds might have been stated in good faith against both companies jointly has not been, and need not be, considered.

The plaintiff relies upon chapter 89, Acts 31st Gen. Assem. Iowa, as authorizing this action, against both companies jointly for the recovery of the property destroyed. Without intimating that this act, if it had been in effect at the time of this shipment, would have been applicable thereto, it is sufficient to say that it did not go into effect until July 4th, following the shipment and the destruction of the property; and that chapter 74, Acts 30th Gen. Assem., which it repeals, and for which it is a substitute, has no application to the shipment in question. It need not be further considered.

The conclusion, therefore, is that the plea to the jurisdiction should be overruled, and the motion to remand denied, and it is so ordered.